SMITH, Circuit Judge,
dissenting.
I respectfully dissent from the majority’s holding that the CWA provisions at issue do not confer upon the Providers “a privately enforceable right under 42 U.S.C.
§ 1983 to receive payments from the State sufficient to cover the cost of certain statutorily enumerated components of foster care.” Consistent with the majority of courts to have addressed the issue, I would “hold that §§ 672(a) and 675(4)(A) of the [CWA] establish a presumptively enforceable right under § 1983 to foster care maintenance payments from the State that cover the cost of the expenses enumerated in § 675(4)(A).” Wagner, 624 F.3d at 982.[10] Therefore, I would reverse the district court’s dismissal of the Providers’ complaint for failure to state a claim.
I. Discussion
“Section 1983 imposes liability on anyone who, under color of state law, deprives a person ‘of any rights, privileges, or immunities secured by the Constitution and laws.’” Blessing, 520 U.S. at 340, 117 S.Ct. 1353 (quoting 42 U.S.C. § 1983). The Supreme Court has recognized that § 1983 “safeguards certain rights conferred by federal statutes.” Id. “In order *1204 to seek redress through § 1983, however, a plaintiff must assert the violation of a federal right, not merely a violation of federal law.” Id. To “determin[e] whether a particular statutory provision gives rise to a federal right,” id., the Supreme Court has directed courts to analyze the following three factors:
First, Congress must have intended that the provision in question benefit the plaintiff. Wright, 479 U.S., at 430, 107 S.Ct., at 773-774. Second, the plaintiff must demonstrate that the right assert-edly protected by the statute is not so “vague and amorphous” that its enforcement would strain judicial competence. Id., at 431-432, 107 S.Ct., at 774-775. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than prec-atory, terms. Wilder, supra, at 510-511, 110 S.Ct., at 2517-2518; see also Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 17, 101 S.Ct. 1531, 1539-1540, 67 L.Ed.2d 694 (1981) (discussing whether Congress created obligations giving rise to an implied cause of action).
Id. at 340-41, 117 S.Ct. 1353.
If a plaintiff shows that a federal statute satisfies these three Blessing criteria, then “there is ... a rebuttable presumption that the right is enforceable under § 1983.” Id. at 341, 117 S.Ct. 1353. “[0]ur inquiry focuses on congressional intent”; therefore, a court properly dismisses a claim where “Congress ‘specifically foreclosed a remedy under § 1983.’ ” Id. (quoting Smith v. Robinson, 468 U.S. 992, 1005 n. 9, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984)). “Congress may do so expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.” Id. In the present case, Congress did not expressly forbid § 1983 actions related §§ 672 and 675 of the CWA.
A. First Blessing Factor— Benefit to Plaintiff
The Supreme Court has “rejected] the notion that [its] cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983.” Gonzaga, 536 U.S. at 283, 122 S.Ct. 2268. According to the Court, although the inquiry into whether a plaintiff may enforce a statutory violation through § 1983 is different from whether the court can imply a private right of action from a statute, “the inquiries overlap in one meaningful respect — in either case we must first determine whether Congress intended to create a federal right.” Id. “For a statute to create such private rights, its text must be ‘phrased in terms of the persons benefited.’ ” Id. at 284, 122 S.Ct. 2268 (quoting Cannon, 441 U.S. at 692 n. 13, 99 S.Ct. 1946). Thus, the plaintiff must show that the “statute ‘confer[s] rights on a particular class of persons.’ ” Id. at 285, 122 S.Ct. 2268 (alteration in original) (quoting California v. Sierra Club, 451 U.S. 287, 294, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981)). “A court’s role in discerning whether personal rights exist in the § 1983 context should therefore not differ from its role in discerning whether personal rights exist in the implied right of action context.” Id. “Accordingly, where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action.” Id. at 286, 122 S.Ct. 2268.
In Gonzaga, the Court “laid out a three-part test to determine whether a provision *1205 creates a ‘right’ that is enforceable under § 1983.” Patrick, 771 F.Supp.2d at 167. The first consideration is “whether the provision contains ‘rights-creating language.’ ” Id. at 168 (quoting Gonzaga, 536 U.S. at 287, 122 S.Ct. 2268). The second consideration is “whether the provision had an aggregate as opposed to an individualized focus.” Id. (citing Gonzaga, 536 U.S. at 287, 122 S.Ct. 2268). The third consideration is “whether the statute contains another enforcement mechanism through which an aggrieved individual can obtain review.” Id. (citing Gonzaga, 536 U.S. at 289-90, 122 S.Ct. 2268).
Applying these considerations I “conclude that Congress intended for §§ 672(a) and 675(4)(A) to benefit Foster Parents as the caregivers for foster children.” Wagner, 624 F.3d at 979.
Section 672(a)-(c) “unambiguously designates foster parents as one of three types of recipients who can receive funds on foster children’s behalf.” Id. First, a state must “make foster care maintenance payments ‘on behalf of each child’ qualifying for foster care.” Id. at 979-80 (quoting 42 U.S.C. § 672(a)). Second, the state may only make “foster care maintenance payments ... on behalf of a qualifying child ... to (1) an ‘individual’ providing a ‘foster family home’; (2) ‘a public or private child-placement or child-care agency’; or (3) a ‘child-care institution.’ ” Id. at 980 (quoting 42 U.S.C. § 672(b)). Third, “[§ ] 672(c) defines a ‘foster family home’ as ‘foster family home for children which is licenced by the State in which it is situated ....’” Id. (alteration in original) (quoting 42 U.S.C. § 672(c)). Therefore, reading § 672 in its totality “establishes that participating states must make foster care maintenance payments on behalf of each child to a foster care provider such as individual foster parents.” Id.; see also Patrick, 771 F.Supp.2d at 171 (concluding that the “first Gonzaga factor requiring] ‘rights-creating language’ ” was satisfied because the “directives [in § 672] are both couched in mandatory terms and are unmistakably focused on the benefitted class, i.e., foster children”).
This case meaningfully differs from “Gonzaga, where the Supreme Court held that the language of [FERPA] did not create an enforceable right.” Wagner, 624 F.3d at 980 (citing 536 U.S. at 276, 122 S.Ct. 2268); see also 20 U.S.C. § 1232g(b)(l) (“No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records ... of students without the written consent of their parents to any individual, agency, or organization .... ”). In that case, the Court concluded that FERPA was not “focus[ed] ... on individual beneficiaries” but instead targeted “the ‘person regulated’ — educational agencies and institutions — rather than the ‘individuals protected’ — the students and their families.” Wagner, 624 F.3d at 980 (quoting Gonzaga, 536 U.S. at 287, 122 S.Ct. 2268). FERPA had an “ ‘aggregate focus’ on ‘institutional policy and practice’ rather than focusing on ‘individual instances’ of noncompliance.” Id. (quoting Gonzaga, 536 U.S. at 288, 122 S.Ct. 2268).
Unlike FERPA, “ § 672 of the CWA focuses squarely on the individuals protected, rather than the entities regulated.” Id. It is not “regulating] state institutions” but instead focused on states making “payments ‘on behalf of each child,’ payments which are directed to foster parents pursuant to § 672(b).” Id. “ ‘In contrast [to FERPA], the CWA contemplates payments directly to providers, and the providers seek enforcement of that right.’ ” Id. (emphasis added) (alteration in origi *1206 nal) (quoting Allenby, 459 F.Supp.2d at 924).
Moreover, § 672(a)(1) has an individual focus — “ ‘payments on behalf of each child’ ” — as opposed to an aggregate focus. Id. (quoting 42 U.S.C. § 672(a)(1)). “Section 672(a)’s focus on individual foster children and § 672(b)’s specific language designating foster care providers to receive payments on foster children’s behalf together unambiguously reflect Congress’s intent that foster care maintenance payments benefit individual foster parents.” Id. at 981. Congress’s embedding of these provisions into “ ‘the requirements for a state plan’ ” does not mean these provisions cannot also create an individual right. Patrick, 771 F.Supp.2d at 171 (quoting Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 74 (1st Cir.2005) (“The mere fact that all the Medicaid laws are embedded within the requirements for a state plan does not, by itself, make all of the Medicaid provisions into ones stating a mere institutional policy or practice rather than creating an individual right.”)).
In holding that no rights-creating language exists in the CWA, the majority attempts to distinguish Wilder. See supra Part II.A. Wilder, however, is not so easily set aside. “In that case, the Supreme Court gave VA hospitals the right to sue in federal court under § 1983 to obtain reimbursement for the cost of providing medical services to indigents as mandated by the Medicaid Act.” Martin, 241 F.Supp.2d at 1040. The Gonzaga Court explained that, in Wilder, it permitted “a § 1983 suit brought by health care providers to enforce a reimbursement provision of the Medicaid Act, on the ground that the provision ... explicitly conferred specific monetary entitlements upon the plaintiffs.” Gonzaga, 536 U.S. at 280, 122 S.Ct. 2268. The Supreme Court did not overrule Wilder in Gonzaga. See Martin, 241 F.Supp.2d at 1041 (“If the Supreme Court had intended to overrule Wilder, one would expect the criticisms or clarification to be directed at Wilder and not Blessing and Suter [v. Artist M., 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992) ].”).
The CWA, like the Medicaid statute in Wilder, explicitly confers monetary entitlements on the foster care institutional providers and evidences Congresses] intent to permit those foster care institutions to enforce their rights in federal court using § 1983. While the ultimate beneficiaries of the Medicaid statute were the indigents who received medical services, the Supreme Court in Wilder found that the hospitals had a right to be paid according to the terms of the statute and could use § 1983 to enforce that right. Similarly, while the ultimate beneficiaries of the CWA are the foster children, Congress mandated that foster care providers should recover their costs, thereby creating a similar right of enforcement recognized in Wilder. Furthermore, in both the CWA and the Medicaid statute, the reference to costs focuses on the institutions and not the children. Congress must have recognized that if costs were not covered, reputable foster care service would eventually not be available. Congress would also have been aware that as a general proposition foster care institutions, not foster children, would be in a better position to enforce those rights, thereby ensuring the continued implementation of congressional intent.
Id. (emphasis added).[11]
Finally, as the majority concedes, the CWA does not contain an alternative en- *1207 foreement mechanism. See supra Part II.C. “Unlike the FERPA [at issue in Gon-zaga], the CWA provides no administrative means through which a foster parent may ask the State to make foster care maintenance payments that cover the mandatory costs.” Wagner, 624 F.3d at 982. The lack of an “administrative forum in which [foster parents may] raise their concerns lends additional support to [the] conclusion that Congress intended to create an enforceable right here, just as the presence of an administrative mechanism ‘buttressed’ the Supreme Court’s opposite conclusion in Gonzaga." Id. (citing Gonzaga, 536 U.S. at 289-90, 122 S.Ct. 2268); see also Patrick, 771 F.Supp.2d at 172 (“While Defendants argue that the [CWA] establishes a ‘comprehensive review and enforcement infrastructure’ by requiring periodic review to determine which states are in substantial conformity with the Act, ... this purely institutional review process is not the same as an individualized enforcement mechanism.”).
I conclude that “[t]he first Blessing factor therefore militates in favor of the creation of an enforceable right.” Wagner, 624 F.3d at 981.
B. Second Blessing Factor— Vagueness of Right
“The second Blessing factor asks whether the plaintiff has demonstrated that the asserted right is not so vague and amorphous that its enforcement would strain judicial competence.” Wagner, 624 F.3d at 981 (quotation and citation omitted). I conclude that § 675(4)(A)’s “itemized list of expenses” creates a “sufficiently specific” right. Id.
Section 675(4)(A) of 42 U.S.C. provides that
[t]he term “foster care maintenance payments” means payments to cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child’s personal incidentals, liability insurance with respect to a child, reasonable travel to the child’s home for visitation, and reasonable travel for the child to remain in the school in which the child is enrolled at the time of placement. In the case of institutional care, such term shall include the reasonable costs of administration and operation of such institution as are necessarily required to provide the items described in the preceding sentence.
“[C]ourts may review the State’s compliance with a requirement to set rates that cover the costs of the enumerated expenditures.” Wagner, 624 F.3d at 981. Although the statute “does not prescribe a particular methodology for calculating costs, [courts may] give deference to a reasonable methodology employed by the State.” Id. (citing Wilder, 496 U.S. at 518-19, 110 S.Ct. 2510). The lack “of a uniform federal methodology for setting rates ‘does not render the [statute] unenforceable by a court.’ ” Id. (alteration in *1208 original) (quoting Wilder, 496 U.S. at 519, 110 S.Ct. 2510).
The majority of “courts considering the combined effect of §§ 672(a) and 675(4)(A) have also concluded that the asserted right satisfies Blessing's second factor.” Id. (citing Payne, 683 F.Supp.2d at 878 (“The statute explicitly requires any State with an approved plan to provide payments on behalf of eligible foster children to cover the specific costs listed in § 675(4)(A). In our view, the language contained in § 672(a)(1) is the type of rights-creating language referenced in Gonzaga. The right to reimbursement is couched in mandatory terms (providing that each State with an approved plan ‘shall’ make foster care maintenance payments) and is neither vague nor amorphous as the statute clearly enumerates the items and services the payments are required to cover.”); Allenby, 459 F.Supp.2d at 925 (“[Sjection 675(4)( [A]) contains an explicit and detailed provision for determining payments to foster care providers.”); Martin, 241 F.Supp.2d at 1041 (“Payments [in § 675(4)(A) ] are based either on itemized costs or reasonable overhead, issues routinely entrusted to the judiciary in both statutory and common law actions.”)); see also Chafee, 800 F.Supp.2d at 388 (explaining that § 675(4)(A) “contains very specific requirements ... for foster care maintenance payments” and that “§ 672(a)(1) ... requires that each State with an approved plan ‘shall make foster care maintenance payments on behalf of each child’ who has been removed into foster care”); Perdue, 218 F.R.D. at 303 (“Although the actual costs of certain basic child care necessities such as food, clothing, and shelter may vary, the Court is equipped to determine whether the current foster care maintenance rates fall outside the range of reasonable payments necessary to provide adequate care for children in Fulton and DeKalb Counties.”).
I would hold that the second Blessing factor is satisfied.
C. Third Blessing Factor — Mandatory Obligation upon the States
“The third and final Blessing factor requires that the provision giving rise to the right is couched in mandatory, rather than precatory, terms.” Wagner, 624 F.3d at 982 (quotation and citation omitted). Here, § 672(a)(1) provides that “[e]ach State with a plan approved under this part shall make foster care maintenance payments.” (Emphasis added.) Thus, it “require[s] that grantee states make payments to identified beneficiaries.” Wagner, 624 F.3d at 982. Therefore, I conclude that the third Blessing factor is satisfied.
II. Conclusion
As have the majority of courts, I would hold “that §§ 672(a) and 675(4)(A) of the [CWA] establish a presumptively enforceable right under § 1988 to foster care maintenance payments from the State that cover the cost of the expenses enumerated in § 675(4)(A).” Id. Although I recognize that this right “is only ‘presumptively enforceable’ by § 1983,” I conclude that “the State has not rebutted the presumption, because the statute contains no express prohibition on enforcement, and there is no administrative mechanism through which aggrieved foster parents can seek redress for inadequate maintenance payments.” Id. Thus, the Providers “have access to a remedy under § 1983 to enforce their federal right.” Accordingly, I would reverse the district court’s dismissal of the Providers’ complaint.

. See also Foster Parents Ass’n of Wash. State v. Dreyfus, No. C 11-5051 BHS, 2013 WL 496062, at *3 (W.D.Wash. Feb. 7, 2013) (slip copy) (holding that "[t]he expenses are clear and the right to reimbursement is clear" under §§ 672(a) and 675(4)(A); therefore, foster parents had a federal right to enforce); Sam M. ex rel. Elliott v. Chafee, 800 F.Supp.2d 363, 387 (D.R.I.2011) (agreeing with the "con-clu[sion] that the [CWA] provisions [of §§ 672(a)(1) and 675(4)(A) ] satisfy] all three Gonzaga factors and, therefore, create privately enforceable rights to case plans and foster care maintenance payments”); Connor B. ex rel. Vigurs v. Patrick, 771 F.Supp.2d 142, 172 (D.Mass.2011) ("[Application of the Gon-zaga factors makes it clear that Congress intended to create privately enforceable rights to ... foster care maintenance payments under the [CWA]."); C.H. v. Payne, 683 F.Supp.2d 865, 877 (S.D.Ind.2010) (agreeing with "the majority of the[] courts” that "§ 672(a)(1) creates rights enforceable by foster parents and foster children under § 1983”); Cal. Alliance of Child & Family Servs. v. Allenby, 459 F.Supp.2d 919, 925 (N.D.Cal.2006) ("[T]he court concludes that CWA confers an individual right on [foster care service providers] for enforcement of the foster care maintenance payments pursuant to section 675(4)(A).”); Kenny A. ex rel. Winn v. Perdue, 218 F.R.D. 277, 303 (N.D.Ga.2003) (granting plaintiffs' motion for leave to file amended complaint to add claim that state defendants violated "plaintiffs’ and class members right to live in foster care placements that have the capacity to provide for the essential needs and services of children in their care by receiving adequate foster care maintenance payments under 42 U.S.C. §§ 671(a)(1), 672(a) and (b), 675(4)(A) and (B), and 45 C.F.R. § 1355.20” after concluding that CWA “provisions ... do create privately enforceable rights”); Mo. Child Care Ass’n v. Martin, 241 F.Supp.2d 1032, 1042 (W.D.Mo.2003) (“[T]he [c]ourt concludes that Congress intended there to be a private right of action under §§ 672 and 675 of the CWA.”).

. The district court criticized Martin's reliance on Wilder, stating that “Martin believed that the Wilder analysis remained sound because Gonzaga did not levy any 'criticisms or *1207 clarification’ at it.” (Quoting Martin, 241 F.Supp.2d at 1041.) It concluded that Gonza-ga rejected the test applied in Wilder " 'in favor of the narrower ‘unambiguously conferred right' analysis that now governs.'" (Quoting Minn. Pharmacists Ass’n v. Pawlenty, 690 F.Supp.2d 809, 818 n. 5 (D.Minn. 2010) (concluding that "it is clear that [Gonzaga] rejected some implications of Wilder ”).) "While the analysis and decision of the District Court may reflect the direction that future Supreme Court cases in this area will take,” given that the Court did not overrule Wilder in Gonzaga and that it is comparable to the present case, I conclude that “currently binding precedent supports” reversal of the district court. See Sabree ex rel. Sabree v. Richman, 367 F.3d 180, 194 (3d Cir.2004) (Alito, J., concurring).